UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| JASON KIRK # 361557, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:16-00031 |
| | ) Chief Judge Crenshaw/Brown |
| CORRECTIONS CORPORATION | ) |
| OF AMERICA, ET AL., | ) |
| | ) |
| Defendants. | ) |

To: The Honorable Waverly D. Crenshaw, Jr., Chief United States District Judge.

REPORT AND RECOMMENDATION

Before the court is plaintiff's motion to reconsider under Rule 54(b), Fed. R. Civ. P. (Doc. 128) For the reasons explained below, plaintiff has failed to show that he is entitled to relief under Rule 54(b). Therefore, the undersigned recommends that plaintiff's motion (Doc. 128) be **DENIED**.

I. BACKGROUND

Plaintiff, proceeding *pro se* and *in forma pauperis*, was a prisoner in the South Central Correctional Facility (SCCF) when he brought this action under 42 U.S.C. § 1983 against twenty-three defendants on May 5, 2016. (Doc. 1) This case originally was assigned to then-Chief Judge Kevin H. Sharp, who referred the case to the undersigned on May 10, 2016 to, *inter alia*, "dispose or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B) . . . ." (Doc. 6)

Plaintiff averred in his original complaint that he "ha[d] attempted to exhaust his administrative remedies for each and every claim he [wa]s presenting . . . by filing a grievance pursuant to T.D.O.C. 501.02 . . . ."[1] (Doc. 1, ¶ (44), p. 6) According to plaintiff, he "exhausted his

---

[1] The undersigned takes judicial notice of the Tennessee Department of Correction (TDOC) *Administrative Policies and Procedures*. *See Toth v. Grand Trunk Railroad*, 306 F.3d 335, 350 (6th Cir. 2002)(citing *Int'l Bhd. of Teamsters v. Zantop Air Transp. Corp.*, 394 F.2d 36, 40 (6th Cir.1968)("[A] Court may take judicial notice of the rules,

administrative remedies offered . . . at S.C.C.F.," but that "there had been numerous instances wherein he . . . filed a grievance only to have the . . . grievance[], ignored or thrown away and simply unprocessed." (Doc. 1, ¶¶ (45)-(46), p. 6)  In a footnote, plaintiff asserted that he made a "good faith effort at exhausting his remedies by filing multiple grievances during the last year." (Doc. 1, n. 1, p. 6)  Plaintiff did not attach copies of any grievances to his complaint, nor was he required to.  Plaintiff later filed an amended complaint on July 7, 2016.  (Docs. 49, 68)  Plaintiff's amended complaint was silent on the issue of exhaustion.

Defendants filed a motion for summary judgment on July 15, 2016.  (Docs. 60-64) Defendants sole argument on summary judgment was that this case should be dismissed because plaintiff had not exhausted his administrative remedies.  Defendants provided the sworn declaration of Senior Corrections Officer (SCO) Leigh Staggs – who is not a defendant to this action – in support of their failure-to-exhaust argument.  (Doc. 60-2)  SCO Staggs attested that Tennessee Offender Management Information System (TOMIS) records showed that plaintiff filed only a single grievance between September 1, 2015 and July 12, 2016, and that there were no paper copies of any other grievances in the SCCF files that may have been returned to plaintiff during that same period. (Doc. 60-2, ¶¶ 13-18, pp. 3-4 of 15)

Plaintiff filed a motion for an extension of time to respond to defendants' motion for summary judgement on August 12, 2016 and again on September 1, 2016.  (Docs. 81, 95)  Both motions were silent on the issue of exhaustion.  Both motions were granted.  (Docs. 84, 97)

Pursuant to Administrative Order No. 186-2, this case was reassigned to Senior United States

---

regulations and orders of administrative agencies issued pursuant to their delegated authority.").  There is no policy 501.02 in the TDOC *Administrative Policies and Procedures*.  Policy 501.01 – with the effective date of October 1, 2012 – covers inmate grievance procedures, and did so at all times relevant to this action.  Moreover, policy 502.02(VI)(H), to which plaintiff refers specifically in a footnote, covers instances "[w]hen an inmate is convicted of the charge of 'Refusal to Participate' and the jobs coordinator determines that a job/program dismissal is warranted, in addition to any other punishment imposed . . . ."

2

District Judge William J. Haynes, Jr. on September 12, 2016. (Doc. 100)

Plaintiff filed a motion for an evidentiary hearing on October 6, 2016 in response to defendants' motion for summary judgment, a supporting memorandum, plaintiff's own affidavit and the affidavits of three other SCCF inmates: Courtney Mathews, Torrie Perkins, and David Hearing. (Docs. 103-107) Plaintiff asserted in his motion that he sought an evidentiary hearing "in support of his allegations that he properly filed numerous grievances and therefore ha[d] properly exhausted his administrative remedies . . . ." (Doc. 103, ¶ (5), pp. 1-2) The crux of plaintiff's justification for an evidentiary hearing was that SCO Staggs allegedly lied in her sworn declaration and that she had a practice of mishandling grievances, violating TDOC grievance procedures, and falsifying official state documents. (Docs. 103, ¶¶ (8)-(12), p. 2; 104, ¶¶ (5), (7)-(9), pp. 1-3) Plaintiff did not attach copies of any grievances to any of the documents that he filed in connection with his motion for an evidentiary hearing.

Plaintiff averred in his memorandum that his affidavit, and those of his fellow inmates, support his allegations that SCO Staggs routinely violates grievance procedures, falsifies official state documents, throws away grievances, or fails to respond to them. (Doc. 104, ¶¶ (11)-(15), p. 3) Turning first to his affidavit, plaintiff averred that he filed 11 grievances pertaining to the matter before the court (hereinafter the grievances at issue), that he followed TDOC grievance procedures, that SCO Staggs "consistently" violated TDOC grievance procedures, and that she prevented his grievances from being processed properly. (Doc. 105, ¶¶ 6-12, pp. 1-2) As noted above, plaintiff did not file copies of any grievances in connection with his motion for an evidentiary hearing.

Turning to the affidavits of the other three inmates, the document purported to have been executed by inmate Mathews was executed on June 30, 2014 in connection with a petition for a declaratory order filed in State court. (Doc. 104, pp. 10-21 of 23) Long on words and short on

3

clarity, inmate Mathews' apparent complaint was that SCO Staggs returned only the first page of the four-page grievance form to him, and that she resolved an unspecified grievance without the authority to do so. In his affidavit, inmate Perkins also attests that SCO Staggs removed the last three pages of a four-page grievance form that he submitted, and that she returned only the white copy (the grievant's copy) to him. (Doc. 106) Finally, inmate Hearing's affidavit is a copy of an appeal challenging SCO Stagg's apparent decision to resolve a grievance when inmate Hearing did not appear at his hearing because "a staff member who [he] did not know" told him to return to his place of work at the prison library because there were more than 30 inmates ahead of him waiting for their hearing. (Doc. 107, ¶ 13, p. 1) Inmate Hearing's basic argument is that SCO Staggs should not have resolved the issue on her own, but should instead have permitted him to appeal.

Defendants responded in opposition to plaintiff's motion for an evidentiary hearing. (Docs. 108-109) Defendants argued, *inter alia*, that plaintiff had not demonstrated, and could not demonstrate, that he had exhausted his administrative remedies, and that the other inmates' affidavits did not support plaintiff's argument that SCO Staggs either threw grievances away or failed to respond them.

Plaintiff filed a motion in opposition to defendants' response to his motion for an evidentiary hearing on November 28, 2016, attaching affidavits from the following inmates: David Hearing, Courtney Mathews, Willie Cole, Tamir Clark, Eric Gilbert, Michael Hart, Gerald Sanford, and William Shatswell. (Doc. 110) In his motion, plaintiff asks rhetorically on one hand, "[h]ow can the Plaintiff . . . produce the actual original grievance, if the grievances are tu[r]ned into SCO Staggs, and she throws them away" (Doc 110, ¶ (27), p. 5), asserting on the other hand that he has been able "to create and retain xerox copies of some of the grievances he filed, and can provide them

4

to the court at an evidentiary hearing" (Doc. 110, ¶ (5), pp. 1-2).[2] Plaintiff once again did not provide the court with copies of the grievances at issue. Plaintiff subsequently filed a motion on December 5, 2016 to conduct an evidentiary hearing by video. (Doc. 111) Defendants responded in opposition to both motions. (Doc. 112)

The undersigned entered an R&R on December 13, 2016 (hereinafter the first R&R) denying plaintiff's motion for an evidentiary hearing, and recommending that the action be dismissed for failure to exhaust as to all of the defendants save Unit Manager Patricia Harrison and SCO Daniel Harville. (Doc. 113) Plaintiff objected to the first R&R, submitting therewith – for the first time – the grievances at issue. (Docs. 116-119) Judge Haynes adopted the first R&R on January 4, 2017, making specific reference to "Docket Entry No. 118," plaintiff's objection to the first R&R. (Doc. 120).

The case was reassigned to now-Chief Judge Waverly D. Crenshaw, Jr. on January 18, 2017 upon the retirement of Judge Haynes. (Doc. 125) Thereafter, plaintiff filed a motion for relief from judgment under Rule 60(b), Fed. R. Civ. P. on January 23, 2017. (Doc. 128) On June 27, 2017, having liberally construed plaintiff's motion as a motion to reconsider under Rule 54(b), Chief Judge Crenshaw referred plaintiff's motion to the undersigned to enter a second R&R "[b]ecause the Magistrate judge did not have the opportunity to review the eleven grievances prior to issuing the Report and Recommendation . . . ." (Doc. 161)

## II. ANALYSIS

District courts have authority Rule 54(b) to consider interlocutory orders and to reopen any

---

[2] The undersigned notes for the record that plaintiff asserted in his January 23, 2017 motion to reconsider that "any body [*sic*] in this suit is capable of lying . . . ." (Doc. 128, ¶ (9), p. 4) Plaintiff's statement that he was "able to create . . . some of the grievance[s] he filed" (Doc. 110, ¶ (5), p. 1), followed by his rhetorical question, "[h]ow can the Plaintiff . . . produce the actual original grievance[s], if the grievances are turned into [*sic*] SCO Staggs, and she throws them away" (Doc. 110, ¶ (27), p. 5), suggests that plaintiff may have fabricated some or all of the grievances at issue.

5

part of a case before entry of final judgment. *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 Fed.Appx. 949, 959 (6th Cir. 2004). Rule 54(b) provides, *inter alia*, that "any order or other decision . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Because final judgment has not entered in this action, the timeliness of plaintiff's motion to reconsider is not at issue. The next question is whether plaintiff's motion to reconsider is justified.

To justify reconsideration under Rule 54(b), plaintiff must show: 1) an intervening change in the controlling law; 2) that new evidence is available; or 3) to correct a clear error or prevent manifest injustice. *Louisville/Jefferson County Metro Govt. v. Hotels.com, L.P., et al.*, 590 F.3d 381, 389 (6th Cir. 2009)(quoting *Rodriguez*, 89 Fed.Appx. at 959). This standard "vests significant discretion in district courts." *Rodriguez*, 89 Fed.Appx. at 959 n. 7. Justice does not require that the district court grant reconsideration on an issue that would not alter its prior decision. *Rodriguez*, 89 Fed.Appx. at 959-60.

### A. Intervening Change in Controlling Law

Plaintiff does not allege, nor can it be liberally construed from the pleadings, that the relief he seeks is based on an intervening change in the controlling law. Therefore, plaintiff is not entitled to relief under Rule 54(b) on an intervening-change-in-controlling-law theory.

### B. New Evidence

"New evidence" means that "the evidence must have been previously unavailable," *i.e.*, that it did "not exist[] prior to the district court's order." *GenCorp, Inc. v. Am. Int's Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999). The grievances at issue purportedly were signed and dated between October 9, 2015 and April 21, 2016, the last one thirteen (13) days before plaintiff posted his

6

complaint to the district court on May 4, 2016 (Doc. 1-1).

Assuming for the sake of argument that the grievances at issue were submitted on the dates they were signed, then they existed and were available to plaintiff more than seven and one-half months before the undersigned entered the first R&R and nearly eight and one-half months before Judge Haynes' January 4, 2017 order adopting the first R&R. Because these alleged copies of the grievances at issue were available many months before either, plaintiff is not entitled to relief under Rule 54(b) on a new-evidence theory.

### C. Clear Error of Law

"'Clear error of law' . . . means . . . application of incorrect law to the facts." *Kelly v. Apria Healthcare, LLC*, __ F.Supp.3d __, 2017 WL 473882 *9 (E.D. Tenn. Feb. 3, 2017)(citing *Kelso v. City of Toledo*, 77 Fed.Appx. 826, 832 (6th Cir. 2003)). Although "there is no practical difference between clear error and plain error review . . . [o]rdinarily, 'the clear error standard is easier to satisfy [than the plain] error because a party does not have to prove that the error affected a substantial rights or the fairness, integrity, or reputation of the judicial proceedings.'" *United States v. Atkins*, 843 F.3d 625, 634 n. 2 (6th Cir. 2016)(citation omitted).

As previously noted above at p. 1, this case was referred to the undersigned to, among other things, "dispose or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B) . . . ." (Doc. 6, p. 3) The statute provides that:

> **A Judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.** A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. **The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.**

28 U.S.C. § 636(b)(1)(bold added). *De novo* review required Judge Haynes to reconsider the first

7

R&R in its entirety without granting any weight or consideration to the recommended findings of fact and conclusions of law. *See e.g., U.S. v. Mardis*, 2011 WL 90314 * 2 (W.D. Tenn. Jan. 11, 2011). "De novo review does not mean, however, that the reviewing court must disagree with any of the findings of the magistrate judge." *Mardis*, 2011 WL *2 (citing *U.S. v. Navarro-Camacho*, 186 F.3d 701, 709 (6th Cir. 1999)).

Judge Haynes wrote the following in his January 4, 2017 order adopting the first R&R: "Before the Court is the Magistrate Judge's Report and Recommendation (Docket Entry No. 113), to which Plaintiff filed objections (Docket Entry No. 118). After de novo review, the Report and Recommendation is **ADOPTED** . . . ." (Doc. 120, p. 1)

Judge Haynes spent 32 years on the bench: fifteen (15) years as a Magistrate Judge from 1984 to 1999, and seventeen (17) years as a District Judge from 1999 to 2017, two of which were as Chief Judge. With 32 years experience, Judge Haynes is deemed to have known and understood the meaning of a "*de novo* review" and, having affixed his signature to his order adopting the first R&R, that he did just that – he considered the first R&R *de novo*. "The mere statement in the opinion and order that the district court ha[s] conducted a de novo review satisfies the standard of a de novo review under 28 U.S.C. § 636(b)(1)." *Kinard v. Stark*, 22 Fed.Appx. 365, 367 (6th Cir. 2001)(citing *Tuggle v. Seabold*, 806 F.2d 87, 92-93 (6th Cir. 1986)(citing *U.S. v. Larson*, 760 F.2d 852, 857 (8th Cir.), *cert. denied*, 474 U.S. 849 (1985)).

In addition to the foregoing, Judge Haynes' specific reference to plaintiff's "objections (Docket Entry No. 118)" establishes that he was aware of plaintiff's objections, and that he took those objections into account during his *de novo* review, including the grievances at issue attached to plaintiff's accompanying affidavit (Doc. 119). As established above at p. 7, Judge Haynes had the option to "receive further evidence" himself, or to "recommit the matter to the magistrate judge

8

with instructions." In electing to do the former, Judge Haynes' actions were entirely consistent with § 636(b)(1). Consequently, there was no error that would entitle plaintiff to relief under Rule 54(b) on a clear-error theory.

### D. Manifest Injustice

"'[M]anifest injustice' . . . [is] . . . defined as '[a]n error in the trial court that is direct, obvious, and observable . . . ,'" *Tennessee Protection & Advocacy, Inc. v. Wells*, 371 F.3d 342, 348 (6th Cir. 2004), "apparent to the point of being indisputable," *Block v. Meharry Med. Coll.*, No. 3:15cv-00204, 2017 WL 1364717 * 1 (M.D. Tenn. Apr. 14, 2017)(citation omitted). "[F]or a court to reconsider a decision due to 'manifest injustice,' the record presented must be so patently unfair and tainted that the error is manifestly clear to all who view it." *Block*, 2017 WL 1364717 * 1 (citation omitted).

As shown above, manifest injustice is couched in terms of direct, obvious, and observable <u>error</u>, the results of which render the record patently unfair and tainted. As previously discussed, Judge Haynes did not err in considering the grievances at issue himself rather than recommitting plaintiff's objection – including the copies of the grievances at issue – to the undersigned. Because there was no error, there was no manifest injustice.

The next question in light of the present order of referral is whether the undersigned's recommendations would have been any different had the matter been recommitted to the undersigned for reconsideration. As shown below, the answer is "No."

Defendants' motion for summary judgment was based on a failure-to-exhaust theory. Title 42 U.S.C. § 1997e of the PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies are available are

9

exhausted. 52 U.S.C. § 1997e(a). Although "prisoners are not required to specifically plead or demonstrate exhaustion in their complaints," "[t]here is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court," *Jones v. Bock*, 549 U.S. 199, 211, 216 (2007).

"[P]roper exhaustion" requires that a prisoner "'complete the administrative review process in accordance with the applicable procedural rules'. . . [as] defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218. To comply with the PLRA's exhaustion requirement, an inmate exhausts his administrative remedies only by "taking advantage of each step the prison holds out for resolving the claim internally and by following the 'critical procedural rules' of the prison's grievance procedure . . . .'" *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010)(quoting *Woodford v. Ngo*, 548 U.S. 81, 90, 95 (2006)). Exhaustion is required even if the prisoner subjectively believes the remedy is not available, *see Brock v. Kenton County*, 93 Fed.Appx. 793, 797-98 (6th Cir. 2004); even when the state cannot grant the particular relief requested, *see Booth v. Churner*, 532 U.S. 731, 741 (2001); and "even where [the prisoner] believes the procedure to be ineffectual or futile . . . ." *Pack v. Martin*, 174 Fed.Appx. 256, 262 (6th Cir. 2006).

"[A]n inmate does not exhaust available administrative remedies when [he] entirely fails to invoke the prison's grievance procedure." *Napier*, 636 F.3d at 225 (citing *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003)(citing *Hartsfield v. Vidor*, 199 F.3d 305, 308-09 (6th Cir. 1999)). Moreover, an inmate may not abandon the grievance process before completion and then claim that he exhausted his administrative remedies. *See Morgan v. Tennessee Dept. of Corrections*, 92 Fed.Appx. 302, 304 (6th Cir. 2004)(citing *Hartsfield*, 199 F.3d at 309); *Wright v. Morris*, 111 F.3d 414, 417 n. 3 (6th Cir.), *cert. denied*, 522 U.S. 906 (1997); *see also Poor v. Grayson, et al.*, 46

10

Fed.Appx. 825, (6th Cir. 2002)(affirming the district court's judgment dismissing a prisoner's complaint because he did not proceed to the next level in the grievance process when prison officials did not respond); *see also Perkins v. Nashville Sheriff Dept.*, No. 3:14-002334, 2015 WL 4752620 * 8 (M.D. Tenn. Aug. 10, 2015)(Trauger J.)(standing for the proposition that an inmate does not exhaust his administrative remedies when he does not raise his grievance to the next level when he has not received a response and the grievance procedure permits the inmate to do).

Plaintiff was a prisoner at SCCF at all times relevant to this action. SCCF is a prison within TDOC. TDOC grievance procedures are set forth in *State of Tennessee Department of Correction, Administrative Policies and Procedures*, Index #: 501.01 dtd October 1, 2012, Subj: Inmate Grievance Procedures (hereinafter "TDOC grievance procedures"). TDOC grievance procedures provide the following in relevant part:

> First Level: Grievances must be filed . . . within seven calendar days of the occurrence or the most recent occurrences giving rise to the grievance. . . .
>
> . . .
>
> Second Level: Within five calendar days of being notified of the Level I response, the grievant may appeal the response to the grievance committee and Warden. . . .
>
> . . .
>
> Third Level. A grievant may appeal the Level II response within five calendar days of receipt of that response. . . .
>
> . . .
>
> **If a time limit expires at any stage of the process without the required response, the grievant may move the grievance to the next stage of the process**, unless the inmate agrees in writing to a fixed extension of the time limit for response.

11

(Index #: 501.01, §§ VI.C-D)

There is nothing on the face of the grievances at issue that shows plaintiff sought to move those grievances to the next stage of the process after allegedly having not received a response to them. Neither has plaintiff alleged, nor can it be liberally construed from the pleadings, that he sought to do so. Indeed, the pleadings are utterly silent on the issue. Although *pro se* complaints are held to less stringent standards than complaints prepared by an attorney, *see Boag v. MacDougall*, 454 U.S. 364, 365 (1982), the courts are not willing to "'abrogate basic pleading essentials in *pro se* suits.'" *See Clark v. Johnston*, 413 Fed.Appx. 804, 817 (6th Cir. 2011)(citation omitted). Nor are the courts required to conjure up unpled facts to support conclusory pleadings. *See Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004)(citation omitted).

Having failed to allege and show that he complied with the text in bold above at p. 11, plaintiff fails to establish – even at this late date – that he exhausted the administrative remedies that were available to him. In short, even if the grievances at issue had been before the undersigned at the time the first R&R entered, the result would have been the same – defendants' motion for summary judgment would have been granted for failure to exhaust. Because the results would have been the same, there was no manifest injustice due to the fact that the grievances at issue were not recommitted to the undersigned for consideration.

### III. CONCLUSION AND RECOMMENDATIONS

For the reasons explained above, plaintiff has failed to show that he is entitled to relief under Rule 54(b). Therefore, the undersigned recommends that plaintiff's motion (Doc. 128) be **DENIED**.

The parties have fourteen (14) days of being served with a copy of this R&R to serve and file written objections to the findings and recommendation proposed herein. A party shall respond

12

to the objecting party's objections to this R&R within fourteen (14) days after being served with a copy thereof. Failure to file specific objections within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal. *Thomas v. Arn*, 474 U.S. 140, 142, *reh'g denied*, 474 U.S. 111 (1986); *see Alspaugh v. McConnell*, 643 F.3d 162, 166 (6th Cir. 2011).

**ENTERED** this the 25th day of July, 2017.

s/ Joe B. Brown
Joe B. Brown
United States Magistrate Judge

13